UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| WILBUR IRICK, |
|                                                  Petitioner, |
|       -against- |
| MICHAEL CAPRA, |
|                                                  Respondent. |

Case No. 1:23-cv-09123 (JLR) (JLC)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

On October 17, 2023, Petitioner Wilbur Irick filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 1. In seeking the writ, Petitioner challenges his New York State conviction of first-degree robbery and second-degree menacing because he was excluded from a pretrial hearing without sufficient warning from the court. *See id*. On June 26, 2024, Magistrate Judge Cott issued a Report and Recommendation, recommending that the petition be denied. Dkt. 21 (the "R&R"). On July 31, 2024, through counsel, Petitioner filed timely objections to the R&R. Dkt. 24 ("Obj."). On September 13, 2024, Respondent filed a response to the Petitioner's objections. Dkt. 27 ("Reply").

The Court incorporates the portion of the R&R that sets forth the factual background and procedural history of the case and references the R&R for a more comprehensive background. *See* R&R at 1-7. The following summary focuses on the facts necessary to the issues presented. Mr. Irick was arrested following the September 24, 2015 robbery of a woman at knifepoint in a subway station. *Id.* at 1-2. In advance of his trial, the court ordered a pretrial hearing to assess whether certain identification evidence should be suppressed. *Id.* at 3. At the beginning of the hearing, Mr. Irick's counsel stated that "Mr. Irick is expressing he does not want to proceed with the hearing today. He told me that I should tell you because otherwise he was going to put an

end to it himself." Dkt. 1-1 ("App.") at A153-54.  In response, the court stated, "[w]e're going to proceed, Mr. Irick, no matter what." *Id.* at A154.

Mr. Irick then stated he was "not feeling well" and "need[ed] emergency medical attention." *Id.*  After the court began to offer Mr. Irick the opportunity to voluntarily remove himself, Mr. Irick interjected that he was "[n]ot going under the *Parker* rule." *Id*.  The court responded that "[t]he case will go on in your absence." *Id.* at A155.  Mr. Irick then objected and stated, "I am not feeling well.  I am not an animal.  I'm asking for medical attention," to which the court replied, "[y]ou are fine." *Id.*  Mr. Irick then stated, "[y]ou raised my blood pressure by denying me my right," to which the court responded, "[b]e quiet.  We will proceed." *Id.*  When Mr. Irick again repeated that he did not feel well, the court entered into the record: "Let the record reflect Mr. Irick has thrown himself on the floor in protest alleging that he has some form of medical problem, which he is clearly malingering in protest.  I am having him escorted out of the courtroom at this time.  We'll proceed without him." *Id*.  The court represented that Mr. Irick then "got up off the floor after saying how ill he was and was escorted out by the court officers." *Id*. at A156.  The suppression hearing proceeded without Mr. Irick and most of the identification evidence he sought to suppress — the testimony of two of the three eyewitnesses, his pants, and a photograph — was admitted.  *Id.*  Mr. Irick was convicted by a jury and sentenced to an aggregate term of eighteen years in prison and five years of post-release supervision.  *Id.* at A81.

The New York Appellate Division, First Department unanimously affirmed Mr. Irick's conviction and sentence.  *People v. Irick*, 163 N.Y.S.3d 530 (App. Div. 2022).  It held that "[t]he totality of the court's interchanges with defendant were sufficient to warn him that if he persisted in his announced plan to prevent the hearing from going forward, the hearing would proceed in his absence." *Id.* at 532.  In 2022, Mr. Irick unsuccessfully sought permission to appeal to the

New York State Court of Appeals and was later denied a writ of certiorari by the Supreme Court of the United States. App. at A137, A161. Mr. Irick then filed the present petition for a writ of habeas corpus and Magistrate Judge Cott issued an R&R recommending that it be denied. For the reasons set forth below, the Court adopts the R&R in its entirety.

## STANDARD OF REVIEW

In its review of a Report and Recommendation on a dispositive motion, a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). When a party submits timely objections to a Report and Recommendation, as Petitioner has done here, the district court reviews *de novo* any part of the magistrate judge's disposition to which the party objected. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order). "'Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a 'meaningless dress rehearsal.'" *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting *Vega v. Artuz*, No. 97-cv-03775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "'The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge.'" *Id.* Other portions of the Report and Recommendation, to which no specific objection is made, may be adopted "as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng.*

*Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72 (b)(2)); *accord Mack v. Collado*, No. 21-cv-08541 (KMK), 2023 WL 6200170, at *2 (S.D.N.Y. Sept. 22, 2023). "In addition, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (citation and quotation marks omitted); *see also United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (rejecting argument raised for the first time as objection to Report and Recommendation).

## DISCUSSION

### I. Standard of Review Under AEDPA, 28 U.S.C. § 2254(d)

"Habeas review is an extraordinary remedy . . . ." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). To be granted a writ of habeas corpus by a federal district court, a petitioner must establish the criteria set forth by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. The AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Jones v. Murphy*, 694 F.3d 225, 324 (2d Cir. 2012) (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011) (per curiam)). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under the AEDPA, courts may only grant a habeas corpus petition if the challenged state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). With respect to the

first basis, a state court decision is "contrary to" Supreme Court precedent when "the state court arrives at a conclusion opposite to that reached [by the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Carmichael v. Chappius*, 848 F.3d 536, 544 (2d Cir. 2017) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). An "unreasonable application" of Supreme Court precedent is one that "correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014). Such application must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id.* at 419 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Supreme Court precedent is "'clearly established' . . . when it is a holding as opposed to *dicta* in a Supreme Court decision 'as of the time of the relevant state-court decision.'" *Morgan v. Walsh*, No. 01-cv-01360 (DLC), 2003 WL 22019835, at *2 (S.D.N.Y. Aug. 27, 2003) (quoting *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001)), *aff'd*, 120 F. App'x 389 (2d Cir. 2005) (summary order).

In terms of the second basis for granting a habeas petition, a state court decision is *not* "based on an unreasonable determination of the facts in light of the evidence" merely when "the federal habeas court would have reached a different conclusion in the first instance," *Wood v. Allen*, 558 U.S. 290, 293, 301 (2010), or "[w]here '[r]easonable minds reviewing the record might disagree' as to the relevant finding." *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (second alteration in original) (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)). Rather, a state court decision satisfies the second ground where, for example, "reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding, or where the court ignored highly probative and material evidence." *Cardoza*, 731

5

F.3d at 178 (citations omitted) (first citing *Wiggins v. Smith*, 539 U.S. 510, 528 (2003); and then citing *Miller-El v. Cockrell*, 537 U.S. 322, 346 (2003)).

## II. Petitioner's Objections to the R&R

Petitioner claims that he was denied due process and his constitutional right to be present when he was involuntarily removed from the courtroom after disrupting his suppression hearing. He relies significantly on *Illinois v. Allen*, which held that:

> a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

397 U.S. 337, 343 (1970) (cited in Obj. at 7-8). Petitioner argues that he was not warned that his disruption would lead to involuntary removal and that his constitutional rights have therefore been violated. Obj. at 1.

Magistrate Judge Cott recommended that the petition be denied. *See* R&R. In so recommending, Magistrate Judge Cott underscored that *Allen* does not expressly require a warning in every instance, and that, in any event, the Appellate Division reasonably held that the totality of the circumstances demonstrate that the trial court sufficiently warned Petitioner. R&R at 11-16. Magistrate Judge Cott separately found that, even if there was error, any error was harmless. *Id.* at 17-19.

Petitioner now raises four principal objections to the R&R. Petitioner argues that: (1) the Appellate Division unreasonably applied the Supreme Court's decision in *Allen*, Obj. at 8-9; (2) the R&R misread Second Circuit law in its interpretation of *Allen*, *id.*; (3) the Appellate Division erred in finding that the totality of the trial court's interactions with Petitioner amounted to a sufficient warning under *Allen* in contravention of the AEDPA, *id.* at 9-11 (citing 28 U.S.C. §

2254(d)(1), (2)); and (4) depriving Petitioner of the right to be present at the suppression hearing constituted a structural error or, alternatively, was not harmless, *id.* at 11-15.

All but the second of Petitioner's objections have been raised previously and considered by Magistrate Judge Cott. "Objections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" *McDowell v. Heath*, No. 09-cv-07887 (RO) (MHD), 2013 WL 2896992, at *2 (S.D.N.Y. June 13, 2013) (alteration in original) (quoting *Vega v. Artuz*, No. 97-cv-03775 (LTS) (JCF), 2002 WL 31174466, at *2 (S.D.N.Y. Sept. 30, 2002)). Accordingly, Petitioner's first, third, and fourth objections do not trigger *de novo* review; if they did, Magistrate Judge Cott's R&R would be reduced to "something akin to a meaningless dress rehearsal." *Forde*, 341 F. Supp. 3d at 336 (S.D.N.Y. 2018) (internal quotation marks omitted) (citation omitted). But in an abundance of caution, the Court will review all of the objections under a *de novo* standard. For the reasons stated herein, the Court rejects Petitioner's arguments.

> **1. The R&R Appropriately Held That *Illinois v. Allen* Does Not Clearly Establish a Right to a Warning Prior to Involuntary Removal at a Suppression Hearing.**

Petitioner argues, for a second time, that *Allen* clearly establishes a right to a warning prior to removal from a suppression hearing. Obj. at 7-8. Magistrate Judge Cott found that Petitioner's reliance on *Allen* is "misguided" because "it is disputed whether th[e] holding in *Allen* stands for the notion that a court's warning is *necessary* for a defendant's involuntary removal." R&R at 12. The Court agrees.[1]

---

[1] As a threshold matter, there is a question as to whether a defendant's right to be present at trial extends to pretrial hearings such as suppression hearings. Petitioner assets that there is "no logical distinction between a suppression hearing and a trial in this context" and that "[a] suppression hearing may often be *more* important to a defendant's prospects before a jury than the trial itself." Obj. at 10 n.5. Although the Supreme Court has not expressly ruled on the right

7

*Allen* does not indicate that a warning is required prior to a defendant's removal in every instance. *Allen* holds that "a defendant can lose his right to be present at trial *if*, after he has been warned . . . , he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 U.S. at 343 (emphasis added). Nowhere in *Allen* does the Supreme Court expressly hold, however, that a warning is a prerequisite for removal.

Lower courts are divided as to whether *Allen* holds that a warning is required before a defendant is removed from the courtroom. *See, e.g.*, *Robinson v. Crawford*, 398 F. App'x 310, 311 (9th Cir. 2010) ("Petitioner's first removal served as the constitutionally required warning for his second removal . . . ."); *Gray v. Moore*, 520 F.3d 616, 624 (6th Cir. 2008) ("[W]e believe that the warning requirement from *Allen* cannot be interpreted in any non-mandatory way."); *United States v. Goldberg*, 67 F.3d 1092, 1101 (3d Cir. 1995) (analyzing *Allen* and finding that "[w]hether or not the warning was required as a matter of constitutional law or under the particular facts is somewhat unclear"); *United States v. Shepherd*, 284 F.3d 965, 967 (8th Cir.

---

to be present at suppression hearings, the Supreme Court has held that defendants have a due process right to be present "whenever [the defendant's] presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964). The Second Circuit has suggested that the right to be present extends to suppression hearings. *See, e.g., Clark v. Stinson*, 214 F.3d 315, 322 (2d. Cir. 2000) ("If fact issues are presented, however, as they often will be on a motion to suppress evidence or on some motions for new trial, it would seem that defendant has a right to be present" (quoting 3A Charles Alan Wright, Federal Practice and Procedure § 721.1 (2d ed. 1982))); *United States v. Clark*, 475 F.2d 240, 246 (2d Cir. 1973) (acknowledging "general right of a defendant to be present at a suppression hearing where testimony is to be taken" (citation and quotation marks omitted)); *United States v. Dalli*, 424 F.2d 45, 48 (2d Cir. 1970) (recognizing that a "defendant has a right to be present at a suppression hearing where testimony is to be taken"). The Court need not, however, decide whether *Snyder* establishes a right to be present here because, for the reasons set forth *infra*, *Allen* does not in any event clearly establish a right to a pre-removal warning in all circumstances.

2002) (declining to find that removal without warning "rises to the level of a constitutional violation"). The Second Circuit has found that *Allen* does not impose an absolute warning requirement. *See Gilchrist v. O'Keefe*, 260 F.3d at 96 ("[W]hile *Allen* stated that a defendant could be removed from the courtroom 'after he has been warned by the judge,' it did not indicate whether such a warning was a requirement in every situation." (quoting *Allen*, 397 U.S. at 343)); *Jones v. Murphy*, 694 F.3d 225, 242 n.9 (2d Cir. 2012) (endorsing *Gilchrist*'s holding that "*Allen* need not be read to create an absolute warning requirement"). Indeed, in seeking a writ of certiorari to the Supreme Court of the United States, Petitioner himself "acknowledged that 'federal circuit courts and state courts of last resort have split in interpreting the *Allen* Court's reference to a pre-removal warning, disagreeing about both its necessity and its content.'" R&R at 13 (quoting Dkt. 15 at SR 266). "In light of the circuit split regarding the *Allen* warning," the Court finds that the "Appellate Division's ruling could not have been contrary to, or an unreasonable application of, clearly established law." *Wilkins v. Ercole*, No. 08-cv-02882 (SAS), 2012 WL 8525915, at *5 (S.D.N.Y. Nov. 5, 2012).

Petitioner argues that "[i]t makes no difference that some lower courts have determined that *Allen* does not require a warning before removal due to verbal outbursts," Obj. at 8 n.4, and that "'[i]t is the word of the Supreme Court, and only the Supreme Court,' that drives the AEDPA inquiry," *id.* (alteration in original) (quoting *Garlick v. Lee*, 464 F. Supp. 3d 611, 620 (S.D.N.Y. 2020)). But the AEDPA "does *not* say that Circuit precedent is irrelevant in deciding that the state court's decision was not . . . an 'unreasonable application'" of clearly established federal law. *Jones*, 694 F.3d at 242 n.9. The fact that lower courts, including the Second, Third, Eighth, and Ninth Circuits, have interpreted *Allen* to not require an explicit warning before a defendant is removed from the courtroom in every instance reflects that there is no agreed-upon

9

Supreme Court precedent that emerges from *Allen*. That is precisely what the R&R found. *See* R&R at 12.

Therefore, the Court agrees with the R&R's recommendation that *Allen* does not clearly establish a constitutional right to a warning prior to involuntary removal at a suppression hearing.

### 2. The R&R Did Not Misread Second Circuit Authority.

Petitioner further argues that Magistrate Judge Cott "misread Second Circuit law," Obj. at 8, asserting that *Jones* and *Gilchrist* did not enforce the *Allen* requirement because those courts were "faced with violent behavior in the courtroom" and not merely disorderly conduct, as here. Obj. at 9. According to Petitioner, "when *Jones* and *Gilchrist* acknowledged that the *Allen* rule is not 'absolute,' they were referring to the obvious reality that *Allen*'s warning requirement does not clearly apply to a defendant who engaged in 'extraordinary violence.'" *Id.* at 9 (citing *Jones*, F.3d at 242; *Gilchrist*, 260 F.3d at 97). The Court does not agree with Petitioner.

Although both *Jones* and *Gilchrist* involved violence, neither decision carves out an exception to *Allen* based only on a defendant's violent behavior. In upholding the trial court's removal of the defendant from the courtroom, *Jones* held only that "a defendant may constructively waive his right to be present at trial by *disruptive* behavior." *Jones*, 694 F.3d at 238 (emphasis added) (citing *Allen*, 397 U.S. at 343). While *Gilchrist* involved forfeiture of the constitutional right to counsel, the court examined *Allen* and found that "while *Allen* stated that a defendant could be removed from the courtroom 'after he has been warned by the judge,' it did not indicate whether such a warning was a requirement in every situation." *Gilchrist*, 260 F.3d at 96 (quoting *Allen*, 397 U.S. at 343). Indeed, the *Gilchrist* court found persuasive the Supreme Court's decision in *Taylor v. United States*, 414 U.S. 17, 20 (1973), which rejected a constitutional challenge where a trial proceeded in a defendant's absence when he failed to

10

appear for the remainder of trial after attending its beginning, notwithstanding the lack of any warning to the defendant. *Gilchrist*, 260 F.3d at 96. The *Gilchrest* court held that "[a]t a minimum, these cases — in particular, *Taylor* — stand for the proposition that, even absent a warning, a defendant may be found to have forfeited certain trial-related constitutional rights based on certain types of misconduct." *Id.* at 97. Like *Jones*, while *Gilchrist* finds that violence may constitute "serious misconduct" sufficient for a defendant to forfeit his or her constitutional rights, *id.* at 97, it does not hold that a finding of violence is the only circumstance in which a defendant can be removed from the courtroom absent a warning.

Therefore, this Court rejects Petitioner's second objection that the R&R misinterpreted Second Circuit precedent by failing to distinguish *Jones* and *Gilchrist* based on the presence of "extraordinary violence."

### 3. The R&R Properly Found That the Appellate Division's Holding Was Not an "Unreasonable Determination of the Facts in Light of the Evidence."

In any event, Magistrate Judge Cott held that, even if *Illinois v. Allen* clearly establishes a right to a pre-removal warning in pre-trial proceedings, the "[t]otality of the circumstances sufficiently warned [Mr. Irick] that he could be removed." R&R at 15-16. Petitioner contends otherwise, maintaining that the court's communications may have informed him that the hearing would continue if he voluntarily removed himself, but "d[id] not constitute a warning that . . . in-court disruption w[ould] lead to *involuntary* removal." Obj. at 10-11.

The record belies Petitioner's characterization of his exchanges with the trial court. After Petitioner conveyed that he was not feeling well and protested the continuance of the suppression hearing, the court stated that it would proceed "no matter what," and if Mr. Irick elected to voluntarily remove himself, that "[t]he case will go on in [his] absence." Dkt. 16 ("State Court Transcript" or "SCT") at 68-69. When Petitioner continued to object, the court instructed him to

11

"[b]e quiet" and indicated that it would proceed. *Id.* at 69. Based on that record, Magistrate Judge Cott found that "[i]t was reasonable for the First Department to have held that the totality of the circumstances sufficiently warned Irick that he could be removed." R&R at 16. This Court agrees. In accordance with AEDPA deference, to rise to the level of an "unreasonable determination of the facts in light of the evidence," a holding must be so errant that "reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding," or that the court "ignored highly probative and material evidence." *Cardoza*, 731 F.3d at 178 (citations omitted). Petitioner's objection fails to meet this demanding standard and this Court agrees with Magistrate Judge Cott's reasoning. Accordingly, Petitioner's third objection is rejected.

### 4. The R&R Properly Concluded That Even if the Trial Court Erred, It Was Harmless.

Finally, Petitioner asserts that the R&R erred in finding that the unconstitutional deprivation of his right to be present at the suppression hearing was structural error. Obj. at 11. He separately asserts that because "Mr. Irick's absence had a 'substantial and injurious' impact on the fact-finding hearing," it was "thus not harmless under *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)." Obj. at 13. The Court does not agree.

As Magistrate Judge Cott acknowledges, a "very limited class of errors" are deemed structural errors requiring automatic reversal "regardless [of] whether the error had any appreciable effect on the outcome of the trial." R&R at 17 (quoting *Yarborough v. Keane*, 101 F.3d 894, 896 (2d Cir. 1996)). "[S]tructural defects affect '[t]he entire conduct of the trial from beginning to end.'" *Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir. 1998) (second alteration in original) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). The Supreme Court has suggested that the majority of constitutional errors — including "the right to be present during all

12

critical stages of the proceedings" — are "subject to harmless error analysis." *Rushen v. Spain*, 464 U.S. 114, 117 n.2 (1983).

Petitioner nonetheless asserts that Mr. Irick's exclusion from his pretrial suppression hearing was a structural error because "that stage was critical to the trial and went directly to the fairness of the criminal proceeding." Obj. at 12. However, none of the cases cited by Petitioner establish that exclusion from a pretrial suppression hearing constitutes a structural error as a matter of federal constitutional law. To the contrary, Petitioner's cited authorities reiterate that the vast majority of constitutional errors are subject to harmless error review. *See Arizona v. Fulminante*, 499 U.S. 279, 306-07 (1991) (observing that the Supreme Court has "applied harmless-error analysis to a wide range of errors," including the erroneous admission of evidence, denial of counsel at a preliminary hearing, and improper comment on a defendant's silence at trial); *Rose v. Clark*, 478 U.S. 570, 576, 579 (1986) (observing that harmless error analysis "has been applied to a wide variety of constitutional errors" and that, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis"). *Lewis v. United States* is a case from 1892 that Petitioner cites for the general proposition that it is a "leading principle" in criminal procedure law that, "after indictment [is] found, nothing shall be done in the absence of the prisoner." 146 U.S. 370, 372 (1892). However, *Allen* explicitly confirmed that "the broad dicta . . . in *Lewis v. United States* that a trial can never continue in the defendant's absence has been expressly rejected." *Allen*, 397 U.S. at 342 (citation omitted). Petitioner therefore cites just one case that suggests that exclusion from a pretrial hearing is a basis for automatic reversal: *People v. Anderson*, 213 N.E.2d 445 (N.Y. 1965). *Anderson* held that a defendant's "unexplained absence" from the courtroom during his suppression hearing

violated due process and New York law and therefore required automatic reversal of his conviction. *Id.* at 448. *Anderson*, however, is a New York Court of Appeals case that is neither binding on this Court nor relevant for purposes of determining whether the lower court unreasonably applied "clearly established" federal law under the AEDPA.[2]

The Court likewise agrees with the R&R's conclusion that any purported error was harmless. R&R at 18-19. Petitioner cannot show that his absence from the suppression hearing had a "substantial and injurious impact" on the result of the proceeding. *Brecht*, 507 U.S. at 623. "In assessing 'whether the erroneous admission of evidence had a substantial and injurious effect on the jury's decision,'" courts consider, among other things, "the overall strength of the prosecution's case." *Wood v. Ercole*, 644 F.3d 83, 94 (2d Cir. 2011) (quoting *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000)). Under this standard, habeas petitioners are "not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." *Brecht*, 507 U.S. at 637 (citation and quotation marks omitted).

Petitioner contends that issues addressed at the suppression hearing, including whether Petitioner's jogging pants were lawfully seized and whether the identifications were police-arranged and unduly suggestive, involved "facts within [Petitioner's] personal knowledge." Obj. at 13. Petitioner further asserts that he had "direct knowledge" about what Detective Herrington said to one of the eyewitnesses before his identification. *Id.* at 14. Petitioner does not, however, specify the nature of his knowledge or explain how his knowledge would have altered the outcome of the proceeding. *See, e.g.*, *Lynes v. Mitchell*, 894 F. Supp. 119, 126 (S.D.N.Y. 1995)

---

[2] Petitioner separately asserts that Mr. Irick's exclusion from the pretrial hearing was structural error because "its 'effects . . . are simply too hard to measure.'" Obj. at 13 (citing *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017)). The Court rejects this argument. Based on the record in this case and the parties' papers, the Court has sufficient information from which to conclude that Mr. Irick was not in fact prejudiced.

(finding harmless error where petitioner "fail[ed] to point out anything that would have been different if he were present" at *Wade/Huntley* hearing), *aff'd*, 104 F.3d 355 (2d Cir. 1996). Petitioner was ably represented by counsel at the suppression hearing, who cross-examined each of the witnesses, including with respect to the seizure of Petitioner's jogging pants and the circumstances surrounding the witness identifications. SCT at 79-87; 98-109. Defense counsel also argued Petitioner's suppression motion, including by highlighting ambiguities and gaps in the officers' testimony and arguing that the identifications were police-arranged and unduly suggestive. *Id.* at 108-09. Moreover, in rendering its determination on Petitioner's suppression motion, the court relied upon the witnesses' experience as officers in crediting their testimony and concluded that the officers "were not at all deceptive or dissimulating in the[ir] testimony." *Id*. at 113. Based on this record, the Court cannot hold that Petitioner has shown, by more than a "reasonable possibility," that his absence from the suppression hearing contributed to the verdict. *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994) ("Habeas relief is not appropriate when there is merely a 'reasonable probability' that trial error contributed to the verdict." (quoting *Brecht*, 507 U.S. at 637)).

More fundamentally, Petitioner's identity was not an issue during the trial. Petitioner was captured on surveillance footage, and at various points throughout the trial, both Petitioner and his counsel admitted that Petitioner was the person shown in the surveillance footage. SCT at 421; Dkt. 16-1 at 213 (Irick: "That depicts me . . . ."). The admissibility of the surveillance footage was not in dispute at the suppression hearing. Rather than challenge his identity, Petitioner's defense at trial was to provide an alternative account of the altercation, whereby the complainant "accosted" him and "threw something" at him, Dkt. 16-1 at 195, which the jury was free to accept (but did not). In response, Petitioner now asserts that if he were not removed from

15

the suppression hearing, "there is a strong likelihood that the defense would not have conceded identity and Mr. Irick would have declined to testify at all." Obj. at 14. Petitioner did not assert this argument before Magistrate Judge Cott and therefore, on that basis alone, the Court need not consider it. *See, e.g.*, *Robinson v. Keane*, No. 92-cv-06090 (CSH), 1999 WL 459811, at *4 (S.D.N.Y. June 29, 1999) ("An objecting party may not raise new arguments that were not made before the Magistrate Judge.") (collecting cases). In any event, Petitioner's objection is unpersuasive; it assumes that Petitioner would have been successful at his pretrial suppression hearing. For the reasons set forth above, the Court does not find that Petitioner has demonstrated that the outcome of the proceeding would have been different had he been present.

Accordingly, the Court finds that Petitioner's exclusion from the suppression hearing had no impact on the jury's verdict and was therefore harmless.

### III.  A Certificate of Appealability (COA) Should Not Issue

Finally, Petitioner argues that "[a]t a minimum, this Court should issue a COA since the constitutional questions presented are 'debatable' amongst reasonable jurists and 'deserve encouragement to proceed further.'" Obj. at 15 (quoting *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)). "A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right." *United States v. Rosario*, Nos. 96-cv-02733 (LBS), 92-cr-00757 (LBS), 1997 WL 639039, at *1 (S.D.N.Y. Oct. 15, 1997); *see* 28 U.S.C. § 2253(c)(2). The AEDPA requires that the certificate of appealability "indicate which specific issue or issues" satisfy this showing. *Rosario*, 1997 WL 639039, at *1 (quoting 28 U.S.C. § 2253(c)(2)). "In other words, for a district court to issue a certificate of appealability, '[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Rodriguez v. Capra*, No. 19-cv-04171 (DLC),

2023 WL 2366884, at *2 (S.D.N.Y. Mar. 6, 2023) (alteration in original) (quoting *Miller-El*, 537 U.S. at 338).

Therefore, to obtain a certificate of appealability, Petitioner had to demonstrate that "reasonable jurists" would find the R&R's analysis of *Allen*, the warnings provided by the trial court, or the harmlessness of the error, debatable or wrong. "Given the highly deferential standard of review which the Supreme Court has emphasized must be given to state court decisions of the kind at issue here, this the petitioner also failed to do." *Id.* at *3. For the reasons noted *supra*, the right to a pre-removal warning at a pretrial suppression hearing has not been "clearly established" by the Supreme Court, the statements by the trial court were sufficient warnings, and any error was harmless and not structural. The Court does not find that reasonable jurists could dispute these findings.

Petitioner's request for a certificate of appealability is therefore denied.

## CONCLUSION

For the foregoing reasons, the Court adopts the R&R in its entirety, and the petition is denied. The Clerk of Court is directed to CLOSE the case.

Dated: December 9, 2024  
       New York, New York

SO ORDERED.

*Jennifer Rochon*  
JENNIFER L. ROCHON  
United States District Judge